

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

Feb. 27, 1947

Hon. Donald M. Markle, Chairman
Committee on Privileges, Suffrage & Elections
House of Representatives, 50th Legislature
Austin, Texas                    Opinion No. V-53

> Re: Whether the House of Rep-
> resentatives may seat a
> delegate elected as the
> "Representative from Nue-
> ces County"

Dear Sir:

You have asked our opinion on the two questions set out be-
low, arising from the following situation stated in your letter of Feb-
ruary 20, 1947, to this department, which reads as follows:

"I hand you herewith an instrument, dated November
18, 1946, executed by the County Judge of Nueces County,
Texas, certifying that at an election held on November 5,
1946, Mr. Philip A. Schraub, of Corpus Christi, Texas,
was elected a Representative from Nueces County to the
House of Representatives of the Fiftieth Legislature.
This instrument was filed with the Chief Clerk of the
House of Representatives on January 16, 1947, and was
referred to the Committee on Privileges, Suffrage and
Elections of the House by the Speaker on February 12,
1947.

"Mr. O. E. Cannon, of Corpus Christi, Texas, has
been certified by the Secretary of State as the duly elect-
ed Representative from District No. 71 to the House of
Representatives of the Fiftieth Legislature. (See page 3
of House Journal for January 14, 1947.)

"The provisions of the election laws of Texas per-
taining to contests arising out of elections for members
of the Legislature do not provide for a situation such
as this one. (See Title 50, Ch. 9, of the R.C.S. of Texas,
1925.)

"On January 16, 1947, Mr. Schraub, in an address de-
livered before the House requested that he be seated.
(See page 42, et seq., of the current House Journal.)

"The Committee on Privileges, Suffrage and Elections of the House, of which I am Chairman, has instructed me to request your opinion on the following two questions:

"(1) could the said Philip A. Schraub legally and constitutionally be seated as a member of the House of Representatives of the Fiftieth Legislature of Texas if the House should vote to seat him?

"(2) if he could be seated by the House, what procedure should this Committee follow in acting upon the instrument herein enclosed?"

The substance of the instrument attached is contained in the first paragraph of your letter; and, for the sake of brevity, will not be here copied. The instrument, being an original document of the House of Representatives, is herewith returned to you.

Article III of the Constitution of Texas states:

"Sec. 2. * * * The House of Representatives shall consist of ninety-three members until the first apportionment after the adoption of this Constitution, when or at any apportionment thereafter, the number of Representatives may be increased by the Legislature, upon the ratio of not more than one Representative for every fifteen thousand inhabitants; provided, the number of Representatives shall never exceed one hundred and fifty." (Underscoring ours.)

"Sec. 26. The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the House is composed; provided, that whenever a single county has sufficient population to be entitled to a Representative, such county shall be formed into a separate Representative District, and when two or more counties are required to make up the ratio of representation, such counties shall be contiguous to each other, and when any one county has more than sufficient population to be entitled to one or more Representatives, such Representative or Representatives shall be apportioned to such county, and for any surplus of

population it may be joined in a Representative District with any other contiguous county or counties."

"Sec. 28. The Legislature shall, at its first session after the publication of each United States decennial census, apportion the State into Senatorial and Representative districts, agreeably to the provisions of sections 25 and 26 of this Article; * * *"

In spite of the provisions of Section 28 of Article III above, the last enactment redistricting the State on the basis of the decennial census, was in 1921 (Acts 1921, 2nd C.S., p. 264, being Art. 195, R.C.S. 1925). That article divides the state into 127 districts. Twelve of the districts are allotted more than one representative; three of such districts (Harris, Bexar, and Dallas Counties) have five representatives each. A count of the representatives provided for in Article 195 shows that there are now 150 representatives from the 127 districts. Accordingly, at the beginning of the Fiftieth Legislature, 150 representatives were certified by the Secretary of State to have been duly elected. Each of the 150 representatives was present for the first roll call. Each of the 150 representatives took the oath of office. (H.J. 50th Leg., pp. 1-5 for Jan. 14, 1947). Mr. Schraub was not among the 150 representatives mentioned above.

It is apparent that since Art. III, Sec. 2 clearly provides that "the number of Representatives shall never exceed one hundred and fifty," and since 150 representatives have been already seated, the House could not constitutionally seat another representative.

Further, Art. 195, as applicable here, provides:

"The Representative Districts shall be composed respectively of the following named counties, each of which Districts shall be entitled to elect one Representative unless otherwise provided herein:

"* * *

"No. 71. Nueces, Jim Wells and Duval"

The act provides for one, and only one, representative from the area composed of Nueces County and two adjoining counties. The Honorable O. E. Cannon, having been already seated from such district, the House would not be justified in seating a second representative from Nueces County.

Finally, the member certified by the County Judge of Nueces County, was declared to have been elected to be the "Representative from Nueces County." There is no such district under Art. 195.

It is perceived that due to the greatly increased population of Nueces County, the effort is here being made to force a redistricting, allowing additional representation from such area. It was, undoubtedly, the plan of the framers of the Texas Constitution, that, based on a decennial census, areas which have had larger proportionate increases in population, should be given additional representation. Texas, being a democracy, it was contemplated that representation should be proportionate to population, with a readjustment of such representation each ten years in order to allow for increases and decreases of population in different areas of the State. Nevertheless, the power and responsibility to redistrict the State is left by the Constitution solely within the province of the Legislature.

As stated in 59 C. J. 78:

"* * * The duty imposed upon the legislative department of the state government to apportion the state is mandatory, and continued until discharged. However, the legislature cannot be compelled to act, and, when it fails at the proper time to do so, this duty falls on each succeeding legislature until performed. But during the interval between the return of an enumeration and the making of a new apportionment, the former apportionment remains in force; and so also when the time for a reapportionment arrives, the old apportionment remains in force until the new act takes effect, or until a valid new apportionment is made, in case if for any reason a valid apportionment act is not passed at the appointed time. * * *"

In New York, a taxpayer brought a mandamus to compel the redistricting to allow additional senators and assemblymen in his area based on increased population, the legislature having failed to redistrict after a ten year period as required by their constitution. The mandamus was denied, the highest New York court saying, "Apportionment is a duty placed by the Constitution on the Legislature, over which the courts have no jurisdiction." Burns v. Flynn, 198 N. E. 424 (1935). For similar holdings, see In Re State Census, (S.D. 1895), 62 N. W. 129; Fergus v. Marks, (Ill. 1926), 152 N. W. 557; 16 C.J.S. 438 (Constitutional Law, Sec. 147); and an annotation, 46 A.L.R. 964.

Attempts have been made to force redistricting by Quo Warranto proceedings (People v. Blackwell, Ill. Sup. Ct. 1930, 173 N.E. 750), and by actions to restrain the comptroller from paying the salaries of legislators who failed to redistrict as required by State Constitutions. (Fergus v. Kinney, Ill. Sup. Ct., 1929, 164 N. E. 665). It is announced in all of these cases that

the legislature is under a mandatory duty to redistrict the state as required by the State Constitution. But responsibility to their constituents, a sense of public duty, and the carrying out of the oath of office taken by the legislators to uphold the Constitution, are the only incentives that can prompt legislative action.

Under Art. III, Sec. 8, the House of Representatives is made the judge of the qualifications and election of its own members. Nevertheless, for the reasons stated, the answer to question (1) is that you may not legally seat Mr. Phillip A. Schraub. The answer to question (2) becomes immaterial and no answer thereto is necessary.

## SUMMARY

A person elected from a district not designated by statute, where such person, if seated, would give more representatives for such area than authorized by statute, and which representative would cause the number of representatives to exceed 150, (the maximum prescribed by Art. III, Sec. 2 of the Texas Constitution), may not be legally seated by the House of Representatives.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

J. R. Greenhill
Assistant

JRG:acm:sl

APPROVED FEB 27 1947

ATTORNEY GENERAL OF TEXAS